UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                              Civil Case No. 18-20561
                              Honorable Linda V. Parker

DEMETRIUS A. MOTON,

        Defendant.
_____/

## **OPINION AND ORDER DENYING**
## **DEFENDANT'S MOTION TO SUPPRESS**

      Defendant Demetrius A. Moton ("Defendant") is charged in this case with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). The matter is presently before the Court on Defendant's September 17, 2018 motion to suppress the firearm and ammunition seized during a traffic stop on July 4, 2018. (ECF No. 16.) The government filed a response to Defendant's motion on October 9, 2018. (ECF No. 18.) On December 4, 2018, this Court held a motion hearing. For the reasons that follow, the Court is denying Defendant's motion.

**Factual and Procedural Background**

      On July 4, 2018, Defendant planned to transport an assault-style rifle and ammunition from his home to his father's home. Defendant and his father live in

Flint, Michigan. Defendant testified at the motion hearing that the weapon belonged to his son, who left for basic training in the United States Army in January 2018. Defendant wanted to remove the weapon from his home because his young children live in the house and a change in his or his wife's work schedule meant that there would be times that neither of them would be home to supervise the children and keep them safe from the gun.

Defendant has a 2003 felony conviction which prevents him from possessing a firearm.[1] However, Defendant testified that he believed he could transport the rifle in his car if someone with a concealed pistol license ("CPL") went with him. Defendant therefore went to Steve Gardner's house, someone who Defendant has known since they went to high school together and who has a CPL. Mr. Gardner confirmed to Defendant that he had a CPL and agreed to ride with him.

Defendant and Mr. Gardner drove in Defendant's 2010 Mercedes to Defendant's father's home, but Defendant's father was not home. After several additional stops to locate his father and get gas, Defendant proceeded to drive around the Flint area. He and Mr. Gardner were listening to music and had their windows rolled at least partially down.

---

[1] On April 1, 2003, Defendant pleaded guilty to second degree murder in the 7th Circuit Court in Flint, Michigan. (*See* Compl. at 3, ECF No. 1 at Pg ID 3.)

On July 4, 2018, Michigan State Troopers Jason Coon and Albert West were working an overtime holiday shift from 6:00 p.m. to 4:00 a.m. The troopers were not each other's normal partners, but they shared a marked patrol car that evening. Their assignment was to patrol the City of Flint.

At approximately 8:00 p.m., the troopers were stopped with their vehicle facing southbound on Trumball Drive at Stewart Avenue in Flint. Trooper West testified that it was still light out at the time. Trooper Coon saw Defendant's vehicle driving eastbound on Stewart Avenue as it passed Trumball, and observed that Defendant was not wearing his seatbelt. Trooper Coon testified that he was able to make this observation because Defendant was wearing a light-colored shirt and his window was partially down.

At the motion hearing, Defendant testified that he was wearing his seatbelt the entire time he was driving. Defendant explained that his car has an "annoying" alarm—a beeping red blinking light—when you fail to wear your seatbelt and so he wears it. When Mr. Gardner testified, he could not remember if Defendant had been wearing his seatbelt.

Trooper Coon attempted to enter Stewart Avenue to execute a traffic stop, but he had to wait for a few cars to pass before he was able to pull onto Stewart. By that point, Defendant had turned northbound on Fleming Road toward Pierson

3

Road. Trooper Coon followed. Trooper West testified that he did not observe Defendant's vehicle when it drove by the stopped patrol car, but that Trooper Coon reported what he witnessed as they began to follow Defendant's vehicle. Trooper West first saw Defendant's vehicle as they travelled northbound on Fleming. Defendant then turned right onto Pierson and pulled into the parking lot of a convenience store on the south-side of the road.

Troopers Coon and West testified that Defendant drove through the parking lot of the convenience store and then immediately exited the lot, turning westbound on Pierson. The troopers made a U-turn and followed Defendant's vehicle as it turned southbound onto Fleming. Trooper Coon testified that when Defendant turned left onto Fleming, he made an illegal turn by entering the right-hand merge lane before returning to the travel lane. Trooper West testified that he also witnessed Defendant make a wide turn. Defendant testified that when he made the turn, he saw glass in the travel lane and moved over to avoid it.

The troopers activated their overhead lights after turning left onto Fleming behind Defendant's vehicle, at which point Defendant stopped his vehicle. After pulling behind Defendant's vehicle, Trooper Coon approached the driver's side door and Trooper West approached the front passenger door. An audio recording of the troopers' interaction with Defendant and Mr. Gardner was introduced as an

4

exhibit at the motion hearing, although it is difficult to hear some of what was said due in part to background noise.[2]

Defendant asked Trooper Coon why he stopped him, and Trooper Coon indicated that Defendant had made a wide turn. Trooper Coon did not mention the seatbelt violation at this time. Trooper Coon then asked Defendant if he had any weapons in the vehicle and Defendant indicated that there was a rifle in the trunk. Trooper Coon asked if the rifle was loaded and Defendant said no but produced a pistol magazine from the center console between the driver and passenger seats. Trooper Coon asked Defendant if he had any prior felonies, to which Defendant responded that he had a prior conviction for felony murder in 2003.

The troopers then instructed Defendant and Mr. Gardner to exit the vehicle and placed them in handcuffs. Trooper Coon asked Defendant for consent to search the vehicle. Defendant denied consent. The troopers proceeded to search the vehicle, citing exigent circumstances and probable cause (that is, the presence of the weapon and ammunition in the vehicle and Defendant's prior felony). The

---

[2] The troopers testified that a camera in the patrol car also should have visually recorded the stop and is designed to automatically turn on when the overhead lights are activated. Before they began their patrol, Trooper Coon tested the camera and it appeared to be working. When the recording from the stop was downloaded, however, it did not capture the outward facing camera feed. The recording did capture video, however, at the point at which the officers moved Defendant to their patrol car and switched the camera to record the vehicle's interior.

search revealed a .45 caliber semi-automatic high point rifle with a scope attached, a magazine with ammunition loaded into the rifle, and three magazines with additional ammunition.

Trooper West then read Defendant his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant indicated he understood his rights and agreed to speak with the troopers. Trooper Coon testified that he asked Defendant why he was not wearing a seatbelt and Defendant said he had just left somewhere and just had not put it on. Trooper Coon then asked Defendant if he "normally wears his seatbelt or just forgot that time," to which Defendant responded that he "just forgot that time." While some of this conversation is not discernible on the audio recording, it is possible to hear the quoted portions from 22:48 to 22:51.

The troopers subsequently placed Defendant under arrest. They removed the handcuffs from Mr. Gardner and told him he was free to leave.

On July 5, 2018, Defendant was charged in a complaint with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A grand jury returned an indictment charging him with the same violation on August 15, 2018.

**Applicable Law and Analysis**

The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and an ordinary traffic stop is a "seizure" within the meaning of the

Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012); *see also Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[A] police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *Jackson*, 682 F.3d at 453 (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)) (additional citations omitted). Michigan law requires the driver and front seat passenger of a motor vehicle to wear a seat belt. *See* Mich. Comp. Laws § 257.710e. The troopers testified that they also believed based on their training that Defendant violated Michigan law by making a wide left turn.[3] An officer's *reasonable* mistake with respect to his or her understanding of the facts or the relevant law does not render a search and seizure unlawful under the Fourth Amendment. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014).

Whether a particular traffic stop is constitutional is analyzed under "the standard for temporary detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010). Under this framework, the stop must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place."

---

[3] After the stop, Trooper Coon cited Michigan Compiled Laws Section 257.647(1)(b) or (c) as the statute Defendant violated.

*United States v. Winters*, 782 F.3d 289, 296 (6th Cir. 2016) (citing *Terry*, 392 U.S. at 20). "If an officer develops reasonable and articulable suspicion of criminal activity during a stop, 'he may extend the traffic stop long enough to confirm or dispel his suspicions. Any such extension, though, must be limited in scope and duration.'" *Id.* (quoting *United States v. Johnson*, 482 F. App'x 137, 143 (6th Cir. 2011) (additional quotation marks and citation omitted)).

The Court holds that Troopers Coon and West had probable cause to believe Defendant was driving without wearing his seatbelt and that he made an illegal left turn. While Defendant now insists he was wearing his seatbelt, in his conversation with the troopers during the stop, he appears to acknowledge that he in fact was not wearing it. While only Trooper Coon observed Defendant without his seatbelt, Trooper West testified that Trooper Coon reported the violation when they began pursuing Defendant's vehicle. Moreover, both troopers and Mr. Gardner indicate that there was discussion during the traffic stop about Defendant not wearing his seatbelt. This evidence suggests to the Court that Trooper Coon did not manufacture the seatbelt violation post-arrest to justify the stop and is credible.

In any event, there is no dispute that Defendant made a wide left turn (that is, entered the outside right lane when turning onto Fleming) while the troopers were following his vehicle but before he was seized for Fourth Amendment

purposes. *See United States v. Johnson*, 631 F. App'x 299, 302 (6th Cir. 2015) (discussing when a motorist is "seized" for purposes of the Fourth Amendment). The turn was made before the troopers activated the patrol car's overhead lights and before Defendant pulled over and stopped in submission to police authority.

In short, there was probable cause to conduct the traffic stop of Defendant's vehicle. Defendant has not challenged the officers' basis for searching the vehicle after learning that there was a rifle and ammunition inside and that Defendant was a convicted felon. The Court concludes that the subsequent search of the vehicle was lawful.

Accordingly,

**IT IS ORDERED** that Defendant's motion to suppress (ECF No. 16) is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: December 20, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 20, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager